IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CALEB A. DIAL,

      Plaintiff,

v.           CIVIL ACTION NO. 3:22-0316

KEITH HIGGINBOTHAM,
individually & in his capacity as a police
officer for the Milton Police Department and
the City of Milton, West Virginia; and
MILTON POLICE DEPARTMENT,
a West Virginia political subdivision; and
CITY OF MILTON, WEST VIRGINIA,
a West Virginia municipality; and
JOHN DOE 1-5,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before this Court is Defendants Keith Higginbotham, the Milton Police

Department, and the City of Milton's Motion to Dismiss. ECF No. 8. Plaintiff Caleb A. Dial filed

a Response in opposition. Defendants did not file a Reply. Upon consideration of the arguments

of the parties, the Court **GRANTS, in part,** and **DENIES, in part,** Defendants' motion.

**I.**
**FACTUAL ALLEGATIONS**

    In his Complaint, Plaintiff states that, on or about April 27, 2021, he called the

police after having a verbal dispute with his father. *Compl.* ¶¶15, 17. Milton Police Officer Keith

Higginbotham was dispatched to the scene. *Id*. ¶¶4, 18. After having a brief discussion with

Plaintiff, Defendant Higginbotham "placed [Plaintiff] in the back of his patrol vehicle." *Id*. ¶19.

After speaking with Plaintiff's father, Defendant Higginbotham then returned to the patrol vehicle

and informed Plaintiff that he "was under arrest for violating several West Virginia criminal statutes." *Id.* ¶20. Plaintiff claims he was unlawfully arrested and spent three days incarcerated at the Western Regional Jail. *Id.* ¶23. Plaintiff also alleges Defendant Higginbotham wrote a report that "is demonstrably false and directly contradicted by the video doorbell footage" and that false information was released to the press. *Id.* ¶¶22-23. Plaintiff does not describe what the report provides, how it is false, or what can be seen on the doorbell video. Additionally, he does not allege any specific physical injuries that occurred as a result of the encounter.[1]

Based upon these allegations, Plaintiff sets forth five federal and six state law claims against Defendants. Plaintiff's federal claims, made pursuant to 42 U.S.C. § 1983, are as follows:

(1) Count I—for the use of excessive force in violation of the Fourth and/or Fourteenth Amendments against Defendant Higginbotham;

(2) Count II—for unlawful arrest and seizure in violation of the Fourth and/or Fourteenth Amendments against all Defendants;

(3) Count III—for false imprisonment in violation of the Fourth and/or Fourteenth Amendments against all Defendants;

(4) Count V—for failure to hire, train, and supervise and for customs, polices, and practices causing violations of the Fourth Amendment against Defendants City of Milton and the Milton Police Department; and

(5) Count X—for malicious prosecution in violation of the Fourth and/or Fourteenth Amendments against all Defendants.

Plaintiff's state law claims include:

---

[1]In his Response, Plaintiff asserts Defendants make certain factual allegations that are outside the four corners of the Complaint. The Court agrees with Plaintiff and has not considered those factual assertions in ruling on Defendants' Motion to Dismiss.

      (1) Count IV—for false imprisonment against all Defendants;

      (2) Count VI—for assault and battery directly against Defendant Higginbotham and against Defendants City of Milton and the Milton Police Department by virtue of vicarious liability;

      (3) Count VII—for intentional infliction of emotional distress against all Defendants;

      (4) Count VIII—for kidnapping against all Defendants;

      (5) Count IX—for malicious prosecution against all Defendants; and

      (6) Count XI— for negligent retention against Defendants City of Milton and the Milton Police Department.

In their motion, Defendants argue that these claims must be dismissed in whole or in part for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court agrees with Defendants to the following extent.

## II.
## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Procedure requires a complaint only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When challenged under Rule 12(b)(6), courts may dismiss complaints or causes of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). If raised, the United States Supreme Court has directed courts to look  for "plausibility" in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief

above the speculative level[.]" *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III.
### DISCUSSION

In their motion, Defendants[2] argue that many of Plaintiff's claims are barred by immunity or otherwise fail to state a claim. In this case, there are two types of immunity at issue. First is whether qualified immunity bars Plaintiff's federal claims. Second is whether statutory immunity bars Plaintiff's state claims. *See Davis v. Milton Police Dep't*, Civ. Act. No. 3:20-0036, 2020 WL 2341238, *3-6 (S.D. W. Va. May 11, 2020) (describing the immunity framework). As each type of immunity utilizes different criteria, the Court shall consider them separately as to the associated causes of action.

### A.
### Qualified Immunity

Initially, the Court notes that qualified immunity only applies to individual defendants and is inapplicable to Plaintiff's claims against the Milton Police Department and the City of Milton. *See id.* at *3 (stating "qualified immunity has no bearing on any of Plaintiff's claims against the Milton Police Department. The Court's analysis is therefore constrained to claims raised against the individual defendants" (citation omitted)). Thus, the Court only

---

[2]The Court generally uses the term "Defendants" to represent Officer Higginbotham, the City of Milton, and the Milton Police Department. The Motion to Dismiss was not filed on behalf of John Does 1-5.

considers whether Defendant Higginbotham is immune from Plaintiff's federal claims in Counts I, II, III, and X.[3]

Qualified immunity is an affirmative defense that protects governmental officials from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). When raised at the pleading stage, its function is to ensure "that insubstantial claims against government officials be resolved prior to discovery[.]" *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (internal quotation marks omitted; brackets in original). To determine if qualified immunity applies to a governmental official, courts make "two separate inquires: first, whether the facts alleged demonstrate that a deprivation of a constitutional right has occurred, and second, whether that right was clearly established at the time of the alleged violation." *Davis*, 2020 WL 2341238, at *3 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). When qualified immunity is raised at the pleading stage, it may be difficult to identify "the precise factual basis for the plaintiff's claim or claims[.]" *Pearson v. Callahan*, 555 U.S. at 238-39. Furthermore, as the second prong creates a "high bar that requires a plaintiff to demonstrate that 'every reasonable official would have understood' that he or she was violating

---

[3]Defendants also argue that Plaintiff's § 1983 action in Count V for failure to hire, train, and supervise, and for customs, policies, and practices in violation of the Fourth Amendment should be dismissed against Defendant Higginbotham on grounds of qualified immunity. However, it is apparent to the Court that Count V was brought against the City of Milton and the Milton Police Department, not Defendant Higginbotham. Therefore, the Court finds it unnecessary to address whether Defendant Higginbotham is entitled to qualified immunity as to Count V. Additionally, as Defendants only argue Counts I, II, III, and X should be dismissed against Defendant Higginbotham on qualified immunity grounds, the Court limits its analysis to that argument and does not address whether these Counts could be dismissed on alternative grounds.

a constitutional right,'" a court may consider either question first. *Davis*, 2020 WL 2341238, at *3 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2001) (other citation and internal quotation marks omitted)). Ultimately, it is the individual defendants' burden to "demonstrate that the Complaint itself reveals 'all facts necessary' to justify the application of qualified immunity." *Id*. at *4.

In their motion, Defendants argue all the federal claims must be dismissed against Defendant Higginbotham due to qualified immunity. In Count I, Plaintiff asserts Defendant Higginbotham "used unnecessary, unreasonable, outrageous, and excessive force on [him] in violation of his clearly established rights guaranteed by the Fourth and/or Fourteenth Amendments[.]" *Compl.* ¶25. However, Plaintiff does not describe in Count I or in his "Factual Allegations" what force was used or how it was excessive.[4] Instead, the Court finds Plaintiff's allegations are nothing more than legal conclusions that are insufficient to demonstrate that a deprivation of a constitutional right has occurred. Thus, the Court finds Defendant Higginbotham is entitled to immunity and grants Defendants' motion to dismiss Count I.

In Count II, Plaintiff claims Defendant Higginbotham did not have probable cause to arrest him, he was arrested under false pretenses, and he was unlawfully arrested in violation of his rights under the Fourth and Fourteenth Amendments. *Id*. ¶¶ 31-34. Again, however, these are legal conclusions, and Plaintiff has not included any facts to support a deprivation of his

---

[4]The Court recognizes that in Count VI for assault and battery Plaintiff alleges Defendant Higginbotham "forcefully grab[bed]" him. *Id.* ¶53. However, Plaintiff neither incorporated this allegation into Count I as a factual basis for his excessive force claim, nor did he include it in his "Factual Allegations" section of his Complaint.

constitutional right to be free from unlawful arrest and seizure. Therefore, the Court agrees with Defendants that Defendant Higginbotham is protected by qualified immunity and dismisses Count II against him.

Similarly in Count III, Plaintiff asserts a legal conclusion that Defendant Higginbotham lacked probable cause to arrest him and he was falsely imprisoned. *Id.* ¶¶ 37-39. Yet, there are no facts asserted in the Complaint to support this conclusion. Merely stating that he was arrested and jailed is not enough to demonstrate a constitutional violation and certainly insufficient to demonstrate a violation of a clearly established right that "'every reasonable official would have understood' that he or she was violating a constitutional right[.]'" *Davis*, 2020 WL 2341238, at *3 (citation omitted). Accordingly, the Court also finds Defendant Higginbotham is entitled to qualified immunity as to Count III and dismisses this cause of action against him.

Lastly, in Count X, Plaintiff alleges that Defendant Higginbotham maliciously filed and pursued criminal charges against him that were untrue and without probable cause. Plaintiff does not describe what those charges were, how they are untrue, or how there was no probable cause. *Compl.* ¶¶75, 76. Plaintiff's meager pleadings and conclusory statements simply are inadequate to demonstrate Defendant Higginbotham violated a constitutional right in Count X. Thus, the Court finds he is entitled to qualified immunity and dismisses Count X against him.

As previously stated, Counts II, III, and X are made against all Defendants. However, Defendants have not moved to dismiss these counts against anyone other than Defendant Higginbotham. Thus, for the time being, those claims remain as to the Milton Police

Department, the City of Milton, and John Does 1-5. As Count I only was made against Defendant Higginbotham, it is dismissed in its entirety.

**B.**
**Statutory Immunity as to the**
**City of Milton and the Milton Police Department**

Pursuant to West Virginia Code § 29-12A-1, *et seq.* (West Virginia's "Governmental Tort Claims and Insurance Reform Act"), political subdivisions, such as the City of Milton and the Milton Police Department,[5] "'are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.'" *Davis*, 2020 WL 2341238 at *5 (quoting W. Va. Code § 29-12A-4(c)(2)); *see also* Syl. Pt. 2, *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620 (W. Va. 1996) (stating "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail."). However, "[b]y the express terms of the Tort Claims Act, political subdivisions cannot be held liable for their employees' intentional malfeasance." *Fields v. King*, 576 F. Supp. 3d 392, 401 (S.D. W. Va. 2021) (citations omitted). Conversely, a political subdivision employee is immune "unless (1) 'his acts or omissions were manifestly outside the scope of employment or official responsibilities,' (2) 'his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner,' or (3) 'liability is expressly imposed upon the employee by a

---

[5]A "political subdivision" is defined as any "municipality" or "any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns[.]" W. Va. Code § 29-12A-3(c), in part.

provision of West Virginia law." *Davis*, 2020 WL 2341238 at *5 (quoting W. Va. Code § 29-12A-5(b)).

In their motion, Defendants argue that the City of Milton and the Milton Police Department are entitled to immunity on Plaintiff's state law claims for Counts IV (false imprisonment), VII (intentional infliction of emotional distress), VIII (kidnapping), and IX (malicious prosecution) because these claims are all based on intentional, rather than negligent, conduct. Plaintiff did not respond to this argument. The Court agrees with Defendants that each of these causes of actions encompass intentional conduct[6] and that the City of Milton and the Milton Police Department are statutorily immune. Therefore, the Court dismisses Counts IV, VII, VIII, and IX against the City of Milton and the Milton Police Department.

## C.
## Assault and Battery

Next, Defendants argue that Plaintiff's claim for assault and battery as set forth in Count VI against Defendant Higginbotham must be dismissed for two separate reasons. First, Defendants maintain Defendant Higginbotham's actions were not tortious because he was

---

[6]*See Erie Ins. Prop. & Cas. Co. v. Edmond,* 785 F. Supp. 2d 561, 573 (N.D. W. Va. 2011) (stating "by its very nature a claim for 'false imprisonment' is intentional under West Virginia law (citations omitted)); *Hall v. Putnam Cty. Comm'n*, Civ. Act. No. 3:22-0277, 2022 WL 15265563, at *12 (S.D. W. Va. Oct. 26, 2022) (providing one element of intentional infliction of emotional distress is "that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct" (citations omitted)); West Virginia Code § 61-2-14a(a) (providing that a kidnapper acts "with the intent to" do certain specified acts); *Seum v. McClure Staffing LLC*, Civ. Act. No. 5:11-0079, 2012 WL 254146, at *6 (N.D. W. Va. Jan. 27, 2012) (stating that "[i]n order to sustain a malicious prosecution claim in West Virginia, a claimant must show malicious intent on the part of the defendant, that the prosecution in question was without probable cause, and that the proceedings in question were terminated in his or her favor" (internal quotation marks and citation omitted)).

privileged to engage in those actions in effectuating Plaintiff's arrest. Second, Defendants assert Plaintiff has failed to allege sufficient facts to state a viable claim of assault and battery against Defendant Higginbotham. The Court addresses these arguments in reverse order.

In simple terms, the tort of assault under West Virginia law "occurs when one person puts another in reasonable fear or apprehension of an imminent battery and battery is any harmful or offensive contact." *Hutchinson v. West Virginia State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010); *see also* Restatement (Second) of Torts § 21 (1965) ("An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.");[7] Restatement (Second) of Torts § 18 (1965) ("An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results."). Here Plaintiff alleges in Count VI that Defendant Higginbotham threatened him with bodily harm "*by* forcefully grabbing [him] without authority or reason to do so, which caused [him] to be in fear of imminent bodily harm." *Compl.* ¶53 (italics added). He also alleges Defendant Higginbotham "in fact did, intentionally and without permission or warning, touch and injure" him, while acting within the scope and in furtherance of his employment. *Id*. ¶¶54-55. Plaintiff further states Defendant Higginbotham did so "with malicious purpose, in bad faith, and in a reckless and wanton manner." *Id*. ¶56.

---

[7]Cited with approval in *West Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 495 (W. Va. 2004).

Applying these facts to West Virginia law, the Court finds Plaintiff has adequately alleged a battery, but not an assault. Although it is possible to have two separately viable claims wherein a completed assault is followed by a discrete battery, Plaintiff has not alleged that here. Rather, Plaintiff's allegations are all based upon this assertion that an offensive contact actually occurred, which is a battery. *See Weigle v. Pifer*, 139 F. Supp.3d 760, 776 (S.D. W. Va. 2015) (recognizing that separate claims for assault and battery can exist, but finding the plaintiff's claim of assault was superfluous where the "officers did not merely threaten offensive contact with [the plaintiff]—they forcibly arrested him"). Thus, Plaintiff's claim of assault is dismissed.

Defendant further argues, however, that because the alleged tortious acts occurred incident to an arrest, Defendant Higginbotham cannot be held liable because he was privileged to take such actions. In *Hutchinson*, this Court explained that "[a]n activity that would otherwise subject a person to liability in tort for assault and battery . . . does not constitute tortious conduct if the actor is privileged to engage in such conduct." 731 F. Supp. 2d at 547 (citations omitted). In *Weigle*, the court held such privilege includes the use of "force during the course of an arrest," but the court recognized this "privilege is not absolute." *Id.* at 776-77 (citation omitted). For instance, there is no privilege if an officer used excessive force. *Id* at 777.

As Plaintiff has failed to sufficiently allege a claim for excessive force, Defendants insist the Court should apply the privilege doctrine and dismiss Plaintiff's claim for assault and battery as well. However, unlike immunity which should be decided sooner rather than later, Defendant Higginbotham's assertion of qualified privilege is an affirmative defense that the Court finds is best decided following discovery. *See West v. Dolgencorp, LLC*, Civ. Act. No. 5:21-CV-

-12-

00477, 2021 WL 4343369, at *2 (S.D. W. Va. Sept. 23, 2021) ("Only in 'the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint' and 'clearly appear on the face of the complaint' may the affirmative 'defense may be reached by a motion to dismiss filed under Rule 12(b)(6).'" (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Although Defendants argue the Court should apply the doctrine now because of the deficiencies in Plaintiff's Count I for excessive force, Plaintiff is not required to successfully plead a count for excessive force in order to maintain a separate cause of action for battery. The omission of factual support for Count I is not the equivalent of concluding those facts do not exist and may be used to mount a response to a claim of privilege.[8] Therefore, the Court finds a ruling on whether Defendant Higginbotham's actions were privileged is premature, and the Court denies Defendants' motion to dismiss Plaintiff's claim for battery.

Additionally, the Court observes that Defendants' assertion this claim was brought only against Defendant Higginbotham is inaccurate. Despite Count VI being entitled as a claim "Against Defendant Higginbotham," Plaintiff clearly alleges within this Count that Defendants City of Milton and the Milton Police Department are vicariously liable for Defendant Higginbotham's conduct. *See Compl.* ¶55 (alleging Defendant Higginbotham's "actions were ratified and adopted by Defendants Milton Police Department and the City of Milton . . . rendering those defendants vicariously liable for his conduct"). Nonetheless, as previously argued by Defendants, West Virginia's Governmental Tort Claims and Insurance Reform Act provides the City of Milton and Milton Police Department immunity for an employee's intentional torts. As

---

[8]Notably, as mentioned in footnote 4, *supra*, although Plaintiff alleges he was grabbed in Count VI, that allegation does not exist in Count I.

battery is an intentional tort, Defendants the City of Milton and the Milton Police Department are entitled to statutory immunity, and this claim is dismissed against them.

### D.
### Kidnapping

Defendants further claim that Plaintiff's claim of kidnapping in Count VIII must be dismissed as it is does not describe any facts to support the claim. The Court agrees. In this Count, Plaintiff cites West Virginia Code § 61-2-14a (West Virginia's criminal kidnapping statute) and asserts Defendants are liable for damages under West Virginia Code § 55-7-9.[9] Plaintiff further states "*[t]he misconduct described in this Count* was undertaken with malice, willfulness, and reckless indifference to the rights of others." *Compl.* ¶67 (italics added). However, Count VIII does not describe any misconduct. Rather, Plaintiff merely asserts that he "realleges and incorporates by reference each and every allegation" previously stated. *Id*. ¶63. The essence of the previously asserted facts is that he was unlawfully arrested and incarcerated for three days. Taking all the alleged facts as true, it simply is not plausible that allegations of Defendant Higginbotham performing his authorized duties in effectuating an arrest and detention, even if ultimately determined to be unlawful, state a plausible factual basis for kidnapping. *See* W. Va. Code § 8-14-3 (describing the powers, authority, and duties of municipal law enforcement officers, which includes the power and duty to arrest). This finding is especially true in light of *Iqbal's* command that this Court employ its common sense and judicial experience in ruling on motions to dismiss. Thus, not only are the City of Milton and Milton Police Department statutory

---

[9]West Virginia Code § 55-7-9 provides "[a]ny person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages." W. Va. Code § 55-7-9.

immune from liability as stated above, but the Court also finds Plaintiff has failed to plausible allege he was kidnapped and dismisses Count VIII in it entirety.

### E.
### Intentional Infliction of
### Emotional Distress as to Defendant Higginbotham

In addition to the City of Milton and the Milton Police Department being statutorily immune, Defendants further argue that Plaintiff's claim of intentional infliction of emotional distress must be dismissed against Defendant Higginbotham because Plaintiff has failed to allege sufficient factual basis for this claim. In order to establish a claim for intentional infliction of emotional distress under West Virginia law, a plaintiff must prove:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc*., 504 S.E.2d 419 (W. Va. 1998). Taking the factual allegations in the light most favorable to Plaintiff in this case, they indicate—at most—that Defendant Higginbotham "forcefully grabbed" him with regard to his claim of battery. However, the West Virginia Supreme Court has held that "when an IIED claim arises from the same event as a battery claim, the two claims cannot simultaneously go forward" because "a plaintiff cannot recover twice for a single injury." *Nutter v. Mellinger*, No. 2:19-CV-00787, 2021 WL 4491752, at *7 (S.D. W. Va. Sept. 30, 2021) (citing *Criss v. Criss*, 356 S.E.2d 620 (W. Va. 1987); *Anderson v. Barkley*, Civ. Act. No. 2:19-00198, 2020 WL 7753290, at *3 (S.D. W. Va. Dec. 29, 2020)). Therefore, when the two claims are filed together and arise from the same event, the intentional

infliction of emotional distress claim is routinely terminated on motions to dismiss and for summary judgment. *Id.* (collecting cases). Thus, to the extent Plaintiff's intentional infliction of emotional distress claim relies upon his allegation that he was "forcefully grabbed," his claim cannot proceed. Likewise, when the Court looks beyond that allegation and considers the other allegations in the light most favorable to Plaintiff, the Court finds he has not stated any facts which remotely could be considered conduct so "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" to maintain his claim for intentional infliction of emotional distress. Syl. Pt. 3, in part, *Travis.* Thus, as Plaintiff has failed to allege a sufficient factual basis for his claim, the Court dismisses Count VII in its entirety.[10]

## F.
## Negligent Retention

Defendants also argue that Plaintiff's claim in Count XI for negligent retention must be dismissed. In this Count, Plaintiff alleges the City of Milton and the Milton Police Department knew of Defendant Higginbotham's misconduct, but they did not terminate him. In *C.C. v. Harrison County Board of Education*, 859 S.E.2d 762 (W. Va. 2021), the West Virginia Supreme Court explained that "to hold an employer liable for negligent retention, the employer must have been able to foresee the possible risk of harm or injury to . . . third parties that could result from the conduct of an unfit employee." 859 S.E.2d at 776 (internal quotation marks and citation omitted). In other words, the test is whether the employer should "have reasonably foreseen the risk caused by . . . retaining an unfit person? Liability for negligent retention may be imposed when an injury occurred as a result of an employer's retention of an unfit employee and

---

[10]Defendants also argue Defendant Higginbotham is entitled to statutory immunity under West Virginia Code § 29-12A-5(b). However, the Court need not resolve that argument.

such risk of injury was reasonably foreseeable to the employer." *Id.* (internal quotation marks and citation omitted).

In this case, Plaintiff has not responded to Defendants' argument that this claim must be dismissed, and a fair reading of his allegations are that the City of Milton and the Milton Police Department were negligent for not terminating him *after* his interaction with Plaintiff. Negligent retention, however, focuses on an employer's foreseeability of wrongful conduct. The fact Plaintiff is upset because they did not terminate him after the fact is not a ground for negligent retention. Given Plaintiff has not alleged Defendant Higginbotham previously committed acts making his alleged wrongful interactions with Plaintiff foreseeable, the Court grants Defendants' motion to dismiss Count XI for negligent retention.

## G.
## Punitive Damages

Finally, Defendants argue Plaintiff's claims for punitive damages are not permitted. Recently, in *Hall v. Putnam County Commission*, Civ. Act. No. 3:22-0277, 2022 WL 15265563 (S.D. W. Va. Oct. 26, 2022), this Court recognized that "[t]he Supreme Court has held that municipalities are immune from liability for punitive damages under § 1983." 2022 WL 15265563, at *14 (citing *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981); *Davis*, 2020 WL 2341238 at *8).[11] As the only claims left against the City of Milton and the Milton Police

---

[11]Plaintiff argues he should be able to collect punitive damages because the prohibition under West Virginia Code § 29-12A-7(a) (prohibiting punitive damages against political subdivisions) is inapplicable by virtue of West Virginia Code § 29-12A-18(e), which provides that Article 12A "does not apply to . . . [c]ivil claims based upon alleged violations of the constitution or statutes of the United States[.]" Here, the impact of subsection § 29-12A-18(e) on § 29-12A-7 is of no consequence because the United States Supreme Court has held that punitive damages are unavailable under § 1983 against municipalities. In addition, although Plaintiff cites *Doe v. Cabell County Board of Education*, Civ. Act. No. 3:21-0031, 2022 WL 568342 (S.D.

Department are ones brought pursuant to § 1983, Plaintiff cannot collect punitive damages from them on those claims. Additionally, as the Court has found Plaintiff cannot proceed on any of the § 1983 claims brought against Defendant Higginbotham, the issue of whether he could be liable for punitive damages as to those claims is moot.[12] Thus, the only issue remaining is whether Plaintiff may collect punitive damages against Defendant Higginbotham with respect to his remaining state law claims. As to these claims against Defendant Higginbotham, the Court finds a ruling on this issue is premature and denies the motion.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part,** and **DENIES, in part,** Defendant's Motion to Dismiss and rules as follows:

Count I          (§ 1983 action for excessive force) is dismissed in its entirety;

Count II         (§ 1983 action for unlawful arrest and seizure) is dismissed as to Defendant Higginbotham, but it remains as to Defendants City of Milton, the Milton Police Department, and John Does 1-5;

Count III        (§ 1983 action for false imprisonment) is dismissed as to Defendant Higginbotham, but it remains as to Defendants City of Milton, the Milton Police Department, and John Does 1-5;

_____

W. Va. Feb. 24, 2022), in support of his argument, the Court notes that the parties in *Doe* did not raise the federal prohibition of punitive damages against municipalities under § 1983 so it was not addressed by the Court.

[12]Even if any of the § 1983 claims had survived, punitive damages are not permitted under § 1983 against officers in their official capacities. *See Isner v. City of Elkins*, Civ. Act. No. 2:21-CV-27, 2022 WL 1750630, at *6 (N.D. W. Va. May 31, 2022) (stating "punitive damages are not available in § 1983 actions against officers sued in their official capacities" (citations omitted)); *compare with White v. City of Greensboro*, Civ. Act. No. 1:18-CV-00969, 2022 WL 3139952, at *10 (M.D. N.C. Aug. 5, 2022) ("[P]unitive damages may be awarded in a § 1983 action against an official in his individual capacity.").

Count IV        (state law claim for false imprisonment) is dismissed as to Defendants City of Milton and the Milton Police Department, but it remains as to Defendant Higginbotham and John Does 1-5;

Count V         (§ 1983 action for failure to hire, train, and supervise and for customs, policies, and practices) remains as to Defendants City of Milton and the Milton Police Department;

Count VI        (state law claims for assault and battery) is dismissed as to the claim of assault, remains as to the battery claim against Defendant Higginbotham, and is dismissed as to Plaintiff's vicarious liability claim against the Defendants City of Milton and the Milton Police Department;

Count VII       (state law claim for intentional infliction of emotional distress) is dismissed in its entirety;

Count VIII      (state law claim for kidnapping) is dismissed in its entirety;

Count IX        (state law claim for malicious prosecution) is dismissed as to Defendants City of Milton and the Milton Police Department, but it remains as to Defendant Higginbotham and John Does 1-5;

Count X         (§ 1983 action for malicious prosecution) is dismissed as to Defendant Higginbotham, but it remains as to Defendants City of Milton, the Milton Police Department, and John Does 1-5; and

Count XI        (negligent retention) is dismissed in its entirety.[13]

Additionally, the Court dismisses Plaintiff's claims for punitive damages except to the extent they are sought against Defendant Higginbotham in his individual capacity.

---

[13]The Court notes that Defendants did not move to dismiss Counts II, III, V, and X against Defendants City of Milton and the Milton Police Department, and they did not move to dismiss Counts IV and IX as to Defendant Higginbotham. Therefore, the Court did not consider the propriety of those claims in the context of those Defendants.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 9, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE